UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRANK CARABALLO,

                Plaintiff,

-against-

WARDEN PLILER, *et al.*,

                Defendants.

**OPINION AND ORDER**

21-CV-10476 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Frank Caraballo ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, commenced this action on November 10, 2021 against Christopher Dilonardo ("Dilonardo"), Jasmine Elmore ("Elmore"), James Gibb ("Gibb"), Tara Grove ("Grove"), Michael Kabanick ("Kabanick"), Jacob Knibbs ("Knibbs"), Bradley Michalak ("Michalak"), Patrick O'Kane ("O'Kane"), Anthony Pedone ("Pedone"), William Pliler ("Pliler"), and Ann Stewart ("Stewart" and collectively, "Defendants"). (Doc. 1, "Compl."). Plaintiff brings claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), alleging Defendants' response to the COVID-19 pandemic conditions at the Federal Correctional Institute in Otisville, New York, violated his First, Eighth, and Fourteenth Amendment rights.

Pending before the Court is Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) or in the alternative, motion for summary judgment under Fed. R. Civ. P. 56. Defendants moved on October 14, 2022 in accordance with the briefing schedule set by the Court. (Doc. 41). Defendants filed a memorandum of law, declaration, and Rule 56.1 statement of undisputed material facts in support of their motion. (Doc. 42, "Def. Br."; Doc. 43, "Alvarez Decl."; Doc. 44,

"56.1 Statement"). Plaintiff filed a memorandum of law in opposition (Doc. 47, "Pl. Br."), and the motion was fully submitted upon the filing of Defendants' reply (Doc. 48, "Reply").[1]

For the following reasons, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

The facts, as recited below, are taken from Plaintiff's Complaint. At the time of the events giving rise to Plaintiff's claims, Plaintiff was incarcerated at Federal Correctional Institute, Otisville ("FCI Otisville") in New York, but was subsequently transferred to Federal Correctional Institution, Tucson ("FCI Tucson") in Arizona. (Doc. 40).

### I.    Plaintiff's Allegations Regarding Defendants' Response to COVID-19

On April 21, 2021, a correctional officer in Plaintiff's unit "called in sick" after developing COVID-19 symptoms. (Compl. at 7). Plaintiff alleges that at this time "no precautions were taken to ensure safety of inmates" apart from posting "warning signs on the doors of high-risk inmates with CPAP machines and BIPAP machines." (*Id.* at 7). When Plaintiff asked about those signs an officer told him "there was something going on." (*Id.*). On April 22, 2021, Plaintiff alleges that another inmate, Jose Herrera, "reported to medical with all the symptoms of COVID-19" but was "sent back to the unit because he had taken the vaccine one day prior." (*Id.* at 8). On April 24, 2021, another inmate, Christopher Johnson, "reported to staff that he was having trouble breathing" at which point Plaintiff's unit was locked down. (*Id.* at 8). Plaintiff alleges that on April 26, 2021, "after 26 inmates tested positive," medical staff started taking inmates' temperatures, but "were recording false temperatures." (*Id.* at 12).

Plaintiff alleges that on four different occasions he had "high fevers and shakes" but was told by medical staff that his symptoms "will go away in 10 days." (*Id.* at 12). On or about June 2,

---

[1] Citations to page numbers of documents filed by Plaintiff correspond to the pagination generated by ECF.

2021, Plaintiff alleges that he sought medical help for his ongoing COVID-19 symptoms. (*Id.* at 11). Plaintiff alleges that he was "denied any treatment because the long residing symptoms of COVID-19 are untreatable according" to medical staff. (*Id.* at 11). Plaintiff further alleges that he still gets "headaches and fatigue" and that it has become difficult for him to breathe when he walks up or down stairs or over long distances. (*Id.*).

During the lockdown, Plaintiff alleges that inmates were forced to live in unsanitary conditions. (*Id.* at 12). The inmates were only allowed to shower three times a week for five minutes. (*Id.*). Inmates were not provided with disinfectants or cleaning agents for the cells and inmates were forced to hand out food without PPE gear. (*Id.*). Plaintiff alleges that inmates were unable to contact loved ones, which caused "anxiety and depression." (*Id.* at 14). Plaintiff alleges that the psychological staff did not do rounds to address that anxiety and depression. (*Id.*).

II.     Plaintiff's Allegations Regarding Administrative Claims

Plaintiff filed two administrative claims in connection with COVID-19 protocols at FCI Otisville. Plaintiff's first set of grievances concerns the alleged inability to socially distance during the unit's lockdown. (Compl. at 10-11). With respect to this complaint, Plaintiff filed a BP-8 form at the institutional level on March 25, 2021, requesting that inmates be able to purchase individual televisions for their cells. (*Id.*, Ex. F1). This request was denied on June 21, 2021 by Warden Pliler, on the grounds that "inmates at FCI Otisville are prohibited from possessing a personal TV in their assigned cell." (*Id.*, Ex. F2). Plaintiff appealed this decision to the BOP regional office on or around June 24, 2021. (*Id.*, Ex. F3). Plaintiff alleges that "it is futile to file a complaint on the administration when you have to turn the complaint into that very same administration" and that he "filed sensitive grievances also and I was met with rejection." (*Id.* at 10).

Plaintiff's second grievance relates to his concerns that the prison staff failed to follow appropriate COVID-19 precautions and protocols. With respect to this complaint, Plaintiff did not file this grievance at the institutional level but instead filed the grievance directly to the regional office on May 2, 2021, claiming that the grievance raised a "sensitive issue." (*Id*., Ex. E). Plaintiff alleges that he did not file his grievance regarding prison staff failing to follow COVID-19 precautions and protocols at the institutional level because "filing at the facility" will only result in "retaliation." (*Id.* at 10). The BOP's regional office rejected the claim for failing to raise a sensitive issue and failing to make the request at the institutional level. (*Id*., Ex. EA). Plaintiff appealed the claim to the BOP's central office, which agreed that it did not raise a sensitive issue and noted that it was filed with the wrong office. (*Id*., Ex. E3).

## STANDARD OF REVIEW

I.      Federal Rule of Civil Procedure 12(b)(6)

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

"When there are well-pled factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-pled factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "is inapplicable to legal conclusions,' and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully pled, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

II.  Documents Considered

On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *see also Manley v. Utzinger*, No. 10-CV-2210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Still, "where an extrinsic document is not incorporated by reference, the district court may nevertheless consider it if the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Schafer v. Direct Energy Servs., LLC*, No. 20-3084-CV, 2021 WL 1621595, at *1 (2d Cir. Apr. 27, 2021) (internal quotation marks omitted).

Plaintiff alleges that he "filed sensitive grievances" regarding the conduct at issue in this action and attaches to his Complaint copies of those grievances and subsequent administrative appeals. (Compl. at 11; Ex. E; Ex. E1; Ex. E2; Ex. E3; Ex. F1; Ex. F2; Ex. F3; Ex. F4). Defendants have, in support of their motion, submitted a copy of Plaintiff's administrative remedy history issued by the Federal Bureau of Prisons. (Doc. 43-1). The Court may properly consider the document concerning Plaintiff's exhaustion of administrative remedies "because he pled

affirmatively that he tried to grieve" his complaints regarding Defendants' response to COVID-19 "and that he appealed the denial of the grievance." *Gunn v. Annucci*, No. 20-CV-02004, 2021 WL 1699949, at *3 (S.D.N.Y. Apr. 29, 2021). "Documents associated with [Plaintiff's grievances] are, therefore, integral to and referenced in the Complaint." *Id.* (citing *Thomas v. Goord*, 215 F. App'x 51, 54 n.2 (2d Cir. 2007)). Accordingly, in addition to the facts alleged in and the documents attached to the Complaint, the Court also considers Plaintiff's administrative remedy history as a document that is integral to and referenced in the Complaint.[3]

## ANALYSIS

I. Prison Litigation Reform Act ("PLRA") Exhaustion

As a threshold matter, the PLRA provides that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Inmates are not required to specially plead or demonstrate exhaustion in their complaints. However, a district court may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). "Indeed, courts within this District routinely grant motions to dismiss where a plaintiff's non-exhaustion is clear from the face of the complaint." *Hickman v. City of New York*, No. 20-CV-04699, 2021 WL 3604786, at *2 (S.D.N.Y. Aug. 12, 2021) (collecting cases).

"To properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by

---

[3] Given that the Court will consider Plaintiff's administrative remedy history as a document that is integral to and referenced in the Complaint, the Court need not and does not convert Defendants' motion to a motion for summary judgment under Fed. R. Civ. P. 56 with respect to administrative exhaustion.

the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citation omitted). When a prisoner is in a federal prison, the grievance process employed by the Bureau of Prisons ("BOP") must be followed. *See Johnpoll v. Thornburgh*, 898 F.2d 849, 850 (2d Cir. 1990) ("The Bureau of Prisons has established administrative remedy procedures by which a federal inmate may seek formal review of a complaint which relates to any aspect of his imprisonment. A federal prisoner is not generally exempt from exhausting federal administrative remedies."); *see also Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (holding that a federal inmate "had to comply with the BOP's administrative grievance system for prisoner complaints").

Here, Plaintiff—"an inmate in BOP custody"—was required to "exhaust a four-step administrative process," which *Gottesfeld v. Anderson* details:

> First, the inmate must present his or her complaint to a staff member on a BP-8 form. If the issue is not resolved, the inmate must then submit an Administrative Remedy Request—on a BP-9 form—to the Warden within 20 calendar days of the incident that triggered the complaint. Where the inmate is not satisfied with the Warden's response, the inmate must submit an appeal to BOP's Regional Director on a BP-10 form, and must do so within 20 calendar days of the Warden's response. Where the inmate is not satisfied with the Regional Director's response, the inmate must file a Central Office Administrative Remedy Appeal on a BP-11 form with the BOP's General Counsel, and must do so within 30 calendar days of the Regional Director's response.

No. 18-CV-10836, 2020 WL 1082590, at *6 (S.D.N.Y. Mar. 6, 2020). The PLRA "requires proper exhaustion, which means using all steps that the prison grievance system holds out." *Williams*, 829 F.3d at 122. There are three circumstances, however, in which a BOP inmate's failure to exhaust this four-step process is excusable because relief is deemed "unavailable":

> First, an administrative remedy may be unavailable when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.' Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.' In other words, 'some mechanism exists to provide

8

> relief, but no ordinary prisoner can discern or navigate it.' Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'

*Id.* at 123-24 (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016)).

Plaintiff filed two grievances related to the allegations in the Complaint. Plaintiff's first grievance relates to the failure of staff members to comply with COVID-19 precautions and protocols. (Compl., Ex. E2). Plaintiff did not submit a BP-9 form at the institutional level related to this grievance, but instead submitted the grievance directly to the regional office. (*Id.*, Ex. E). The regional office rejected the grievance for failure to follow the correct procedures and directed Plaintiff to "first file a BP-9 request through the institution for the Warden's review and response before filing an appeal at this level." (*Id.*, Ex. EA). Plaintiff alleges that he never filed this grievance at the institutional level because "filing at the facility will only work to force officers and staff to retaliate against inmates in violation of [the] First Amendment." (*Id.* at 10). Plaintiff's second grievance relates to the inmates' inability to socially distance in the common areas of the prison. (*Id.*, Ex. F1). Plaintiff appealed this administrative claim at the institutional and regional levels but failed to file a Central Office Administrative Remedy Appeal on a BP-11 form with the BOP's General Counsel. (Doc. 43-1).

Plaintiff alleges that his failure to exhaust his administrative remedies under the PLRA is excusable because of his belief that "it is futile to file a complaint on the administration when you have to turn the complaint into that very same administration" and because "filing at the facility will only work to force officers and staff to retaliate against inmates." (Compl. at 10). Neither of these reasons excuse the PLRA's exhaustion requirement. Plaintiff's decision not to utilize the four-step process available to him "is insufficient to negate the PLRA's exhaustion requirement." *Mena v. Cty. of N.Y.*, No. 12-CV-0028, 2014 WL 2968513, at *6 (S.D.N.Y. June 27, 2014).

9

"Simply put, futility is not established by an inmate's subjective belief that his administrative complaint might be denied." *Smith v. United States Dep't of Just.*, No. 18-CV-03371, 2021 WL 2480412, at *6 (S.D.N.Y. June 17, 2021). Finally, with respect to Plaintiff's theory of unavailability based on fear of retaliation, "that premise fails because Plaintiff's explanations about the origins of that fear lack specificity." *Wing v. Myers*, No. 18-CV-11056, 2022 WL 507425, at *8 (S.D.N.Y. Feb. 18, 2022) (collecting cases). Plaintiff has alleged nothing more than a "generalized fear of retaliation [that] is insufficient to excuse his failure to file a grievance." *Little v. Mun. Corp. Cty. of N.Y.*, No. 12cv5851, 2017 WL 1184326, at *11-12 (S.D.N.Y. Mar. 29, 2017). These allegations are insufficient as a matter of law to satisfy the PLRA's exhaustion requirement.

Accordingly, Plaintiff's Complaint is dismissed for failure to exhaust administrative remedies.

## II.   *Bivens* Claims

Plaintiff's Complaint must also be dismissed for the separate reason that he has failed to state claims for relief under *Bivens*. Construing the Complaint liberally, Plaintiff has asserted three claims: (1) retaliation in violation of Plaintiff's First Amendment rights; (2) a Fourteenth Amendment claim regarding "medical negligence and deliberate indifference"; and (3) an Eighth Amendment claim regarding inadequate and unsanitary "conditions of confinement" and "deliberate indifference to Plaintiff's serious medical needs". (Compl. at 16). Plaintiff seeks, in connection with his claims, both "punitive damages" and injunctive relief in the form of "televisions in the cells."[4]

---

[4] "The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities." *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007); *see also Walker v. Kim*, No. 18-CV-04090, 2020 WL 7685100, at *15 (S.D.N.Y. Apr. 24, 2020) ("It is well-settled that the only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities."). Plaintiff's request for injunctive relief therefore fails as a matter of law and is dismissed.

In *Bivens*, "the Supreme Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). The "judicially-created" *Bivens* remedy is intended "to deter individual federal officers from committing constitutional violations" and permits a citizen to recover monetary damages directly from a federal official. *Id.* (quoting *Malesko*, 534 U.S. at 70). The Supreme Court has found that a *Bivens* remedy "is an extraordinary thing that should rarely if ever be applied in 'new contexts.'" *Id.* (citing *Malesko,* 534 U.S. at 69).

The Supreme Court has only recognized a *Bivens* remedy in three contexts. First, in *Bivens* itself, the Supreme Court permitted a plaintiff to recover monetary damages related to a Fourth Amendment violation. *Bivens*, 403 U.S. at 389-90. There, the plaintiff alleged he was "subjected to an unlawful, warrantless search which resulted in his arrest." *Arar*, 585 F.3d at 571 (citing *Bivens*, 403 U.S. at 389-90). Second, in *Davis v. Passman*, the Supreme Court applied *Bivens* in the Fifth Amendment context to an employment discrimination claim. 442 U.S. 228 (1979). Third, in *Carlson v. Green*, the Supreme Court applied *Bivens* in the context of an Eighth Amendment violation by prison officials, where, despite being on notice of an inmate's serious asthmatic condition, prison staff "failed to give him competent medical attention for some eight hours after he had an asthmatic attack," resulting in the inmate's death. 446 U.S. 14, 16 n.1 (1980). Despite many other opportunities to extend *Bivens*, the Supreme Court has consistently declined to do so and has observed that "if 'the Court's three *Bivens* cases [had] been . . . decided today,' it is doubtful that we would have reached the same result." *Hernandez v. Mesa*, 140 S. Ct. 735, 742-43 (2020) (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017)); *see also Doe v. Hagenbeck*, 870 F.3d 36, 43 (2d Cir. 2017) ("In the forty-six years since *Bivens* was decided, the Supreme Court

11

has extended the precedent's reach only twice, and it has otherwise consistently declined to broaden *Bivens* to permit new claims." (citing *Abbasi*, 137 S. Ct. at 1857)).

The court evaluating a *Bivens* claim conducts a two-step inquiry. First, the court must determine whether the claim "arises in a 'new context' or involves a 'new category' of defendants." *Hernandez*, 140 S. Ct. at 743 (quoting *Malesko*, 534 U.S. at 68). The Supreme Court has found that the "understanding of a 'new context'" should be construed broadly so as to include any context that is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Id*. (quoting *Abbasi*, 137 S. Ct. at 1859). Second, if the claim does arise in a new context, the court must determine "whether there are any special factors that counsel hesitation about granting the extension." *Id*. (citing *Abbasi*, 137 S. Ct. at 1857). One such special factor is "whether there is an alternative remedial scheme available to the plaintiff." *Arar*, 585 F.3d at 572; *see also Abbasi*, 137 S. Ct. at 1863 ("[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not."). If there are "special factors that counsel hesitation about granting the extension," then the court should not create a new *Bivens* remedy. *Hernandez*, 140 S. Ct. at 743 (brackets omitted). With these guiding principles in mind, and cognizant that "the Supreme Court has warned that the *Bivens* remedy is an extraordinary thing that should rarely if ever be applied in 'new contexts,'" *Arar*, 585 F.3d at 571 (citing *Malesko*, 534 U.S. at 69), the Court addresses each of Plaintiff's claims seriatim.

A. First Amendment Claim[5]

Plaintiff asserts a First Amendment retaliation claim alleging that he was retaliated against in response to filing administrative grievances and this Complaint. "Nationwide, district courts seem to be in agreement that . . . prisoners have no right to bring a *Bivens* action for violation of the First Amendment." *See Negron v. United States*, No. 19-CV-05442, 2020 WL 5634304, at *7 (S.D.N.Y. Sept. 21, 2020); *see also Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."); *Egbert v. Boule*, 142 S. Ct. 1793 (2022) (there is no *Bivens* action for a federal official's retaliation for exercising First Amendment rights). The Court therefore holds that Plaintiff's First Amendment retaliation claim arises in a new *Bivens* context. The Supreme Court, in *Bush v. Lucas*, squarely addressed the second step of the *Bivens* inquiry for First Amendment retaliation claims and declined "to create a new substantive legal liability" because "Congress is in a better position to decide whether or not the public interest would be served by creating it." 462 U.S. 367, 390 (1983).

Accordingly, the Court dismisses Plaintiff's First Amendment *Bivens* claim.

B. Eighth Amendment Claim[6]

---

[5] It appears that Plaintiff has abandoned his First Amendment retaliation claim, as Plaintiff noted in his opposition that he "only mentioned the First Amendment claims to illustrate and establish the methods taken by the BOP and the administration when handling the administrative remedies." (Pl. Br. at 2). Plaintiff further requested in his opposition that "the Court[] review his claims in light of the 8th Amendment." (*Id.* at 5). Nevertheless, out of an abundance of caution and giving the appropriate "special solicitude" to Plaintiff's *pro se* pleading, the Court turns to whether Plaintiff has stated a *Bivens* claim for retaliation under the First Amendment.

[6] Plaintiff characterizes his deliberate indifference claim as being brought under both the Eighth Amendment and Fourteenth Amendment. (Compl. at 16). A deliberate indifference claim under the Fourteenth Amendment is applicable to "state pretrial detainees who are seeking to vindicate their constitutional rights." *Darnell v. Pineiro*, 849 F.3d 17, 21 (2d Cir. 2017). The Fifth Amendment, similarly, "protects federal pretrial detainees from deliberate indifference to their serious medical needs." *Reynolds v. Fed. Bureau of Prisons*, No. 21-CV-04763, 2021 WL 2338249, at *3 (S.D.N.Y. June 7, 2021); *Gamora v. Borough of Prisons*, No. 22-CV-07802, 2022 WL 4357921, at *2 (S.D.N.Y. Sept. 19, 2022) (noting that a deliberate indifference claim arises "under the Eighth Amendment for a convicted prisoner and under the Fourteenth or Fifth Amendment for a pretrial detainee"; *Edwards v. Gizzi*, No. 20-CV-07371, 2022 WL

The Court next turns to Plaintiff's Eighth Amendment claim asserting that the prison's response to COVID-19 created unsafe and unsanitary conditions of confinement. Plaintiff further alleges that his Eighth Amendment rights were violated when he was provided inadequate medical care for his COVID-19 symptoms. Plaintiff's Eighth Amendment claim is distinguishable from the one at issue in *Carlson*, where an inmate was admitted to the prison hospital with an asthmatic attack. *Green v. Carlson*, 581 F.2d 669, 672 (7th Cir. 1978), *aff'd*, 446 U.S. 14 (1980). Although the inmate was in critical condition for eight hours, he was not seen by a doctor. *Id.* A nurse attempted to use a respirator on the inmate although he knew it was broken and administered "two injections of Thorazine, a drug contraindicated for one suffering an asthmatic attack". *Id.* Shortly after the second injection, the inmate suffered a respiratory arrest, was sent to a nearby hospital, and pronounced dead upon arrival. *Id*.

Here, Plaintiff alleges that he contracted COVID-19 "on at least four different occasions" during which time he "was under the covers for the high fever and shakes" and complained of "issues breathing." (Compl. at 12). Plaintiff further alleges that the medical staff at FCI Otisville were monitoring his symptoms and that he was told by a nurse that his COVID-19 symptoms "will go away in 10 days." (*Id.*) The harm alleged by Plaintiff is distinguishable from *Carlson*, where medical personnel failed to provide any treatment for a life-threatening condition. "Because the [D]efendants' alleged deliberate indifference to the [P]laintiff's COVID-19 symptoms did not result in any serious injury or harm, the [P]laintiff's allegations would present a new *Bivens* context that is much different from the life-threatening asthma attack that the plaintiff suffered in

---

309393, at *6 n.5 (S.D.N.Y. Feb. 2, 2022) (noting that "it is likely that the Eighth Amendment, and not the Fifth Amendment, that governs [p]laintiff's claims, given [p]laintiff's status as a convicted prisoner and not a pretrial detainee"). Plaintiff, a convicted federal prisoner, is not a pretrial detainee and therefore cannot assert a deliberate indifference claim under either the Fifth Amendment or the Fourteenth Amendment. Accordingly, the Court dismisses Plaintiff's deliberate indifference claim to the extent that it is brought under either the Fifth Amendment or the Fourteenth Amendment.

*Carlson.*" *Mendoza v. Edge*, 615 F. Supp. 3d 163 (E.D.N.Y. 2022). Accordingly, the Court holds that Plaintiff's Eighth Amendment claim arises in a new *Bivens* context. [7]

The Court next turns to whether there are any special factors that counsel hesitation about granting the extension. "Where there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Cohen v. United States*, No. 21-CV-10774, 2022 WL 16925984, at *7 (S.D.N.Y. Nov. 14, 2022). Here, Plaintiff could have sought habeas relief related to the conditions of his confinement under 28 U.S.C. § 2241. *See Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) ("This court has long interpreted § 2241 as applying to challenges to the execution of a federal sentence, including such matters as the administration of parole . . . prison disciplinary actions, prison transfers, type of detention and prison conditions."); *Elleby v. Smith*, No. 20-CV-02935, 2020 WL 2611921, at *2 (S.D.N.Y. May 22, 2020) ("The Second Circuit has held that both habeas petitions, at least for prisoners in federal custody . . . may address conditions of confinement and seek the remedy of transfer"); *Cohen v. United States*, No. 21-CV-10774, 2022 WL 16925984, at *8 (S.D.N.Y. Nov. 14, 2022) (holding a federal prisoner could have brought a habeas petition related to the conditions of his conferment and the availability of that remedy was a special factor counseling against extension of *Bivens* remedy to plaintiff's claims). Even apart from habeas relief, Plaintiff could have—and indeed did—utilize the BOP's own four-step administrative remedy

---

[7] District courts throughout the country have held that claims regarding COVID-19 prison conditions arise in a new *Bivens* context. *See Carey v. Von Blanckensee*, 515 F. Supp. 3d 1051, 1056-57 (D. Ariz. 2021) (finding that plaintiff's COVID-19 prison conditions claim arose in a new *Bivens* context); *Hand v. Young*, No. 20-CV-00784, 2021 WL 3206833, at *4, n.1 (E.D. Cal. July 29, 2021) (same); *Walker v. United States*, No. 21-CV-01881, 2022 WL 1472872, at *4 (M.D. Penn. May 10, 2022) (same); *Mosley v. United States*, No. 22-CV-00321, 2022 WL 2183079, at *3 (W.D. Okla. May 13, 2022) (finding that claims alleging that a prison "fail[ed] to maintain social distancing, fail[ed] to separate COVID-19 positive inmates and staff from general inmate population . . . differ significantly from the *Bivens* trilogy of actions sanctioned by the Supreme Court" and holding that such claims "arise in a new context").

program, which provides an "alternative, existing process" available to Plaintiff to remedy the alleged harms. *Rivera v. Fed. Bureau of Prisons*, No. 17-CV-05103, 2018 WL 11312146, at *8 (S.D.N.Y. Dec. 14, 2018) (finding that the BOP's administrative remedy program constituted an alternative remedial scheme to a *Bivens* remedy). Finally, Plaintiff could alternatively have sought "injunctive or declaratory relief to challenge and seek" compliance with COVID-19 protocols. *Ojo v. United States*, 364 F. Supp. 3d 163, 174 (E.D.N.Y. 2019). Accordingly, this Court dismisses Plaintiff's Eighth Amendment *Bivens* claim.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's Complaint with prejudice, as any amendment would be futile. *See Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) ("leave to amend is not necessary when it would be futile").

The Clerk is instructed to (i) terminate the motion sequence pending at Doc. 41, (ii) mail a copy of this Opinion and Order to Plaintiff, and (iii) close this case.

**SO ORDERED.**

Dated: White Plains, New York
       May 15, 2023

_____
Philip M. Halpern
United States District Judge